**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| TEAMSTERS LOCAL 456 PENSION, HEALTH & WELFARE, ANNUITY, EDUCATION & TRAINING, INDUSTRY ADVANCEMENT, AND LEGAL SERVICES FUNDS by Louis A. Picani, Joseph Sansone, Dominick Cassanelli, Jr., Saul Singer, Ross Pepe, and Jeffrey Isaacs as Trustees and fiduciaries of the Funds, and WESTCHESTER TEAMSTERS LOCAL UNION NO. 456, | ) ) ) ) ) ) ) **COMPLAINT** ) |
| Plaintiffs, | ) Civil Action No. ) |
| – against – | ) ) |
| K & D INDUSTRIES OF NY, LLC<br>1006 Lower South Street<br>Peekskill, New York 10566 | ) ) ) ) ) |
| and | ) ) |
| KARL BJORKLAND, INDIVIDUALLY<br>1006 Lower South Street<br>Peekskill, New York 10566 | ) ) ) ) |
| Defendants. | ) ) ) |

Plaintiffs, by their undersigned attorneys, Blitman & King LLP, complaining of the

Defendants, respectfully allege as follows:

## I.      JURISDICTION AND VENUE

1.       This is an action arising under the Employee Retirement Income Security Act of

1974, as amended ["ERISA"] [29 U.S.C. §§1001 *et seq.*]. It is an action by fiduciaries of employee

benefit plans for monetary and injunctive relief to redress violations of ERISA Sections 515 and

502(g)(2) [29 U.S.C. §§1145, 1132(g)(2)].

2.      Jurisdiction is conferred on this Court by ERISA Section 502(a), (e), and (g)(2) [29 U.S.C. §1132(a), (e), and (g)(2)], without respect to the amount in controversy or the citizenship of the parties, as provided in ERISA Section 502(f) [29 U.S.C. §1132(f)].

3.      Venue is established in this Court by ERISA Section 502(e)(2) [29 U.S.C. §1132(e)(2)]. It is an action brought in the judicial district where the plans are administered and where the ERISA violations took place.

4.      This is also an action arising under Section 301(a) of the Labor-Management Relations Act of 1947, as amended ["LMRA"] [29 U.S.C. §185(a)].  It is a suit for, among other things, violations of a contract between an employer and a labor organization representing employees in an industry affecting commerce as defined in the LMRA [29 U.S.C. §141 *et seq.*].

5.      Jurisdiction is also conferred on this Court, without respect to the amount in controversy, pursuant to LMRA Section 301(a) [29 U.S.C. §185(a)], and pursuant to the laws of the United States of America [28 U.S.C. §1337].

## II. DESCRIPTION OF THE PARTIES

6.      Plaintiffs Louis A. Picani, Joseph Sansone, Dominick Cassanelli, Jr., Saul Singer, Ross Pepe, and Jeffrey Isaacs are Trustees and fiduciaries of the Teamsters Local 456 Pension, Health & Welfare, Annuity, Education & Training, Industry Advancement, and Legal Services Funds ["Funds"] as defined in ERISA Section 3(14)(A) [29 U.S.C. §1002(14)(A)].

7.      The Funds are "employee benefit plans," "multiemployer plans," and/or "industry advancement programs" within the meaning of ERISA Sections 3(3) and (37)(A) [29 U.S.C. §§1002(3), (37)] and LMRA Sections 302(c)(5) and (9) [29 U.S.C. §186(c)(5) and (9)]. The Funds are established through collective bargaining agreements, and they are administered within the Southern District of New York at 160 South Central Avenue, Elmsford, New York 10523 in

Westchester County, New York.

8.      The Funds are jointly administered by Boards of Trustees, comprised of an equal number of labor and management representatives in accordance with LMRA Section 302(c)(5) [29 U.S.C. 186(c)(5)].

9.      Plaintiff Local 456, International Brotherhood of Teamsters also known as Westchester Teamsters Local Union No. 456 ["Local 456" or "Union"] is an unincorporated association maintaining its principal offices within the Southern District of New York at 160 South Central Avenue, Elmsford, New York 10523 in Westchester County, New York. The Union is a labor organization in an industry effecting commerce within the meaning of the LMRA Section 301(a) [29 U.S.C. §185(a)].

10.     Upon information and belief, K & D Industries of NY, LLC. ["Company"] is a domestic business incorporated under the laws of the State of New York, having its principal place of business and offices located at 1006 Lower South Street, Peekskill, New York 10566.

11.     Upon information and belief, Defendant Karl Bjorkland is an individual as well as an owner, officer, agent, and/or managing agent of the Company with the business address of 1006 Lower South Street, Peekskill, New York 10566.

12.     Defendant Company operates in an industry affecting commerce within the meaning of the LMRA Section 301(a) [29 U.S.C. §185(a)].

13.     Defendants are parties in interest with respect to the Funds as defined in ERISA Section 3(14)(H) [29 U.S.C. §1002(14)(H)] and act directly as an employer and/or indirectly in the interests of an employer in relation to the Funds, all as defined in ERISA Section 3(5) [29 U.S.C. §1002(5)].

14.     To the extent that Defendants exercised any authority or control with respect to the management or disposition of assets of an ERISA covered plan, they are fiduciaries within the meaning of ERISA Section 3(21)(A) [29 U.S.C. §1002(21)(A)].

### III. FIRST CAUSE OF ACTION

15.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "14" inclusive of this Complaint as if fully set forth herein.

16.     ERISA Section 515 [29 U.S.C. §1145] provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

17.     At all times relevant herein, Defendant Company is party to one or more collective bargaining agreements with Local 456 ["Agreements"], together with a Settlement Agreement entered on July 11, 2016 and attached hereto as Appendix "A."

18.     Pursuant to the Agreements, Defendant Company is bound by the terms and conditions, rules and regulations of the Agreements and Declarations of Trust of the Teamsters Local 456 Pension, Health & Welfare, Annuity, Education & Training, Industry Advancement, and Legal Services Funds together with the Funds' Policy for Collection of Delinquent Contributions ["Trusts" and "Collections Policy"].

19.     The Agreements and Trusts obligate Defendant Company to make contributions to multiemployer plans.

20.     The Agreements further obligate the Defendant Company to deduct from each of its employees' wages specified amounts and pay these amounts to the Union, representing Union dues deductions and other monies.

{B0117562.1}                                        4

21.    In addition to the above and pursuant to the Agreements, the Trusts, and the Collections Policy together with ERISA Sections 515 and 502(g)(2) [29 U.S.C. §§1145; 1132(g)(2)] and LMRA Section 301 [29 U.S.C. §185(a)], in the event the Defendant Company fails to timely remit contributions and deductions, the Company becomes liable not only for the amount of contributions and deductions due, but also for the following: (1) interest on the unpaid and untimely paid Funds contributions, at the rate of ten percent (10%) per annum; (2) liquidated damages equal to ten percent (10%) of those delinquent contributions; and (3) the attorneys' fees, audit fees, and the costs of collection.

22.    The Agreements and Trusts obligate the Defendant Company to remit the contributions by the first (1st) day of the month following the month during which the hours were worked by employees.

23.    At all times relevant to this Complaint, and based on Defendant Karl Bjorkland's ownership, management, and control over Defendant Company as well as the other factors established by applicable law, Defendant Company is bound to the Agreements, Trusts, and Collections Policies and is liable for the amounts owed as described in this Complaint.

24.    Upon information and belief, Defendant Company is owned and operated by Defendant Karl Bjorkland from the facility located at 1006 Lower South Street, Peekskill, New York 10566.

25.    Based on Shop Steward Reports related to work in covered employment, the Defendant Company owes $57,485.23 in fringe benefit contributions and deductions for hours worked by the Defendant's employees during the period July 1, 2019 through August 31, 2019.

26.    The Defendant Company has failed and refused, and continues to fail and refuse,

to pay the contributions and deductions due for the period August 1, 2019 through August 31, 2019, plus the applicable interest, liquidated damages, attorneys' fees, audit fees, and costs.

27.     The Defendant Company, therefore, owes $57,485.23 in fringe benefit contributions and deductions for hours worked by the Defendant's employees for the period July 1, 2019 through August 31, 2019, plus interest, liquidated damages, attorneys' fees, audit fees, and costs at the rates set forth in the Collections Policy.

### IV.  SECOND CAUSE OF ACTION

28.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "27" inclusive of this Complaint as if set forth fully at this point.

29.     During the period January 1, 2019 through July 31, 2019, Defendants untimely remitted $70,333.38 to the Plaintiffs related to hours worked in covered employment by its employees pursuant to the Agreement.

30.     As a result of the Defendants' untimely remittance of $70,333.38, the Defendants owe interest and liquidated damages at the rates set forth herein.

31.     Defendants, therefore, owe $552.75 in interest (for May, June, and July contributions) and $7,033.33 in liquidated damages related to work in covered employment during the period January 1, 2019 through July 31, 2019 together with the costs and fees of collection.

32.     Based on the failure to follow the Collections Policy, the Defendant Company owes $552.75 in interest (for May, June, and July contributions) on the late paid contributions and $7,033.33 in liquidated damages related to the late paid contributions, plus the costs and fees of collection as set forth in the Collections Policy.

## V. THIRD CAUSE OF ACTION

33.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "32" of this Complaint as if fully set forth herein.

34.     ERISA Section 404(a) provides that fiduciaries must discharge their duties with respect to an ERISA covered plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits" and "defraying reasonable administrative expenses" [29 U.S.C. §1104(a)(1)(A)].

35.     ERISA Section 404(a) also provides that fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments" are consistent with federal law [29 U.S.C. §1104(a)(1)(D)].

36.     The Trusts provide in pertinent part that title to all monies paid into and/or due and owing to the Funds vested in and remains exclusively in the Trustees of the Funds, so outstanding and withheld contributions constitute plan assets.

37.     As a result of the work performed by Defendants under the Agreements, Defendants, upon information and belief, received substantial sums of money related to construction projects intended to pay, among other things, the wages and benefits of employees furnishing and supplying the labor.

38.     Defendants were fiduciaries with respect to the plan assets that they failed to timely remit to the Funds.

39.     Upon information and belief, Defendant Karl Bjorkland owned, controlled, and dominated the affairs of Defendant Company, he purportedly acted on behalf of and in the interest of the Company, and he carried on the business of the Defendant Company for his own personal ends.

40.     Upon information and belief, Defendant Karl Bjorkland withheld, permitted the

withholding of, or authorized the withholding of contributions to the Funds, and Defendant Karl Bjorkland dealt with plan assets for his own personal use and benefit although the plan assets rightfully belonged to the Funds.

41.    Upon information and belief, Defendant Karl Bjorkland had managerial discretion and control over Defendant Company, made all decisions on behalf of the Defendant Company, signed contracts governing the Defendant Company, acted on behalf of and in the interest of Defendant Company, and made all decisions concerning payments by the Defendant Company.

42.    Upon information and belief, Defendant Karl Bjorkland determined which creditors Defendant Company would pay, determined when the Defendant Company would pay the Funds, determined how much money would be paid to the Funds, determined which employees of the Defendant Company would be reported to the Funds, and exercised control over money due and owing to the Funds.

43.    Upon information and belief, Defendant Karl Bjorkland commingled or permitted the commingling of assets of the Funds with the Defendant Company's general assets and used the Funds' assets to pay other creditors of Defendant Company rather than forwarding the assets to the Funds.

44.    Upon information and belief, while retaining Plaintiffs' contributions, Defendant Karl Bjorkland transferred, applied, or diverted, or permitted the transfer, application, use, or diversion of, the Funds' assets for purposes other than the Funds without first making payment to Funds.

45.    The transfer of the assets to persons other than the Funds described in this Complaint occurred, and/or the use of the assets for purposes other than those permitted by the Plaintiff Funds occurred, with the knowledge and/or at the direction of, Defendant Karl Bjorkland.

46.     By withholding the contributions from one or more of the Funds, Defendant Karl Bjorkland received and retained for his own personal use and benefit, monies which were rightfully assets of the Funds in violation of ERISA Section 404(a)(1)(A) [29 U.S.C. §1104(a)(1)(A)].

47.     By withholding the contributions from one or more of the Funds, Defendant Karl Bjorkland failed to abide by the documents and instruments governing the Funds in violation of ERISA Section 404(a)(1)(D) [29 U.S.C. §1104(a)(1)(D)].

48.     To the extent Defendant Karl Bjorkland acting in his capacity as corporate officer, director, and/or shareholder, abused his position as fiduciary by permitting, directing, or instigating this transfer, application, or diversion in a manner contrary to his fiduciary obligations and his actions are a breach of trust under ERISA, 29 U.S.C. §§1104, 1106, and 1109.

49.     By reason of the wrongful diversion and/or conversion of the Funds' assets, the Funds have not been paid monies rightfully due to them.

50.     As a result of the breaches of fiduciary duty described above, Defendant Karl Bjorkland is liable to the Funds (i) for the fringe benefit contributions due and owing to the Funds; plus (ii) for the interest at the consolidated rate of return of the Funds' investments; plus (iii) for the attorneys' fees and costs of collection; and (iv) to restore Funds any profits that Defendants made through use and retention of the assets of these Funds.

## VI. FOURTH CAUSE OF ACTION

51.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "50" inclusive of this Complaint as if fully set forth herein.

52.     Absent an exemption, ERISA Section 406(a) makes it unlawful for fiduciaries to permit ERISA covered plans to engage in certain transactions with parties in interest, including transactions that exchange property or extend credit [29 U.S.C. §1106(a)(1)(A) and (B)]. Absent

an exemption, ERISA Section 406(b) makes it unlawful for fiduciaries to deal with plan assets for their personal account [29 U.S.C. §1106(b)(1)-(3)].

53.     At all times relevant herein, Defendants were parties in interest with respect to the Funds because they were fiduciaries, employers, or owners within the meaning of ERISA Section 3(14)(A), (C), and (E) [29 U.S.C. §1002(14)(A), (C), and (E)].

54.     To the extent that Defendant Karl Bjorkland has withheld, permitted the withholding of, or authorized the withholding of the contributions from one or more of the Funds, Defendant Karl Bjorkland has dealt with the plan assets in his own interest and/or exchanged property or extended credit from plan assets for his own personal use and benefit in violation of ERISA Section 406 [29 U.S.C. §1106], and he has received and retained from the Funds for, upon information and belief, his own personal use and benefit, monies which are rightfully assets of the Funds.

55.     To the extent that Defendant Karl Bjorkland has withheld, received, and retained the contributions, or allowed the withholding and retention of contributions, Defendant Karl Bjorkland as a party in interest, has impermissibly used the assets of one or more of the Funds in contravention of ERISA Section 406 [29 U.S.C. §1106], the interests of the Funds and the interests of the Funds' fiduciaries, participants, and beneficiaries.

56.     As a result of the breaches of fiduciary duty described above, Defendant Karl Bjorkland is liable to the Funds (i) for the fringe benefit contributions due and owing to the Funds; plus (ii) for the interest at the consolidated rate of return of the Funds' investments; plus (iii) for the attorneys' fees and costs of collection; and (iv) to restore Funds any profits that Defendants made through use and retention of the assets of these Funds.

## VII. FIFTH CAUSE OF ACTION

57.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "56" inclusive of this Complaint as if set forth fully herein.

58.     If this Court does not enjoin Defendants from further violations of ERISA, LMRA, the Agreements, Trusts, and Collections Policy, the Funds will be further damaged as a result thereof in ways and amounts which cannot be accurately measured in terms of money, either as to extent or amount.

59.     Defendants have failed to comply with their obligations to the Plaintiff Funds, despite due demand for compliance, and unless this Court enjoins Defendants from violating ERISA, LMRA, the Agreements, Trusts, and Collections Policy, Defendants will continue to fail to timely remit contributions, deductions, and monthly remittance reports described above, causing Plaintiff Funds and the beneficiaries of the Funds to incur additional serious and irreparable harm by further burdening and obstructing the administration and operation of the Funds and endangering the payment of promised benefits from the Funds to qualified beneficiaries.

60.     Defendants' failure to comply with its obligations to the Funds has reduced the corpus and income of the Funds thereby jeopardizing the stability and soundness of the Funds as well as the ability to pay benefits.

61.     Defendants' failure to comply with their obligations to the Funds may cause sufficient instability to the Funds' financial affairs such that participant benefits may be reduced or terminated.

62.     Because Defendants continue to fail to comply with their obligations to the Funds, new delinquencies are now being created monthly, again depriving the Funds of adequate monies to pay promised benefits which in turn could cause the foregoing irreparable harm to be intensified

in magnitude.

63.     Based on the foregoing instances of serious, substantial, and irreparable injury and damage, a mere money judgment is an inadequate remedy at law.

64.     Unless this Court enjoins Defendants from breaching ERISA, LMRA, the Agreements, Trusts, and Collections Policy and unless Defendants are compelled to remit all monies and reports that become due or are determined to be due to Plaintiffs whether arising before or after commencement of the action, greater injury will be inflicted upon the Funds, their Trustees, participants and beneficiaries, by denial of relief than could possibly be inflicted upon Defendants by granting such relief.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A.     On Plaintiffs' First Cause of Action, judgment against the Defendant Company for $57,485.23 in fringe benefit contributions and deductions for hours worked by the Defendant's employees for the period July 1, 2019 through August 31, 2019, plus interest, liquidated damages, attorneys' fees, audit fees, and costs at the rates set forth in the Collections Policy.

B.     On Plaintiffs' Second Cause of Action, judgment against Defendant Company for $552.75 in interest (for May, June, and July contributions) on the late paid contributions and $7,033.33 in liquidated damages related to the late paid contributions, plus the costs and fees of collection as set forth in the Collections Policy.

C.     On Plaintiffs' Third and Fourth Causes of Action, judgment against Defendant Karl Bjorkland (i) for the fringe benefit contributions due and owing to the Funds; plus (ii) for the interest at the consolidated rate of return of the Funds' investments; plus (iii) for the attorneys' fees and costs of collection; and (iv) to restore to the Funds any profits that Defendants made

through use and retention of the assets of these Funds.

    D.      On Plaintiffs' Fifth Cause of Action, judgment against the Defendants as follows:

          1.      Judgment for any and all additional contributions and deductions that become due following commencement of the action or are determined to be due whether arising before or after commencement of the action, plus the applicable interest and liquidated damages as set forth herein;

          2.      A permanent injunction preventing and restraining the Defendants from breaching the Agreements and Declarations of Trust, and the collective bargaining agreement by which they are bound; and

          3.      A permanent injunction directing the Defendants to perform and continue to perform their obligations to the Plaintiffs, specifically, directing them to timely furnish the required monthly remittance reports and payments to Plaintiffs, and to provide the Plaintiffs, upon demand and at Defendants' expense, access to the books and records for an audit and examination relating to the employment of its employees, including but not limited to weekly payroll reports, payroll journals and quarterly employer reports for various federal and state agencies.

    E.      Such further relief as the Court deems just and appropriate.

DATED: October 11, 2019

                          **BLITMAN & KING LLP**

                  By: _____

                          Daniel Kornfeld, of counsel
                          Attorneys for Plaintiffs
                          Office and Post Office Address
                          One Penn Plaza, Suite 2601
                          New York, New York 10119-2699
                          Telephone: (212) 643-2672
                          Facsimile: (315) 471-2623
                          e-mail: dekornfeld@bklawyers.com

# APPENDIX A

ORIGINAL

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into this 11th day of July 2016 between the Trustees of the Teamsters Local 456 Pension, Health & Welfare, Annuity, Education & Training, Industry Advancement and Legal Services Funds ("Funds") and the Westchester Teamsters Local 456 ("Local 456"), and K&D Industries of NY, LLC ("Employer") (collectively "Parties").

WHEREAS, the Employer's obligation to remit contributions to the Funds and Local 456 arises from its entry into a collective bargaining agreement (as well as any successor collective bargaining agreements entered into with Local 456 during the life of this Settlement Agreement) (collectively, the "CBA") with the Westchester Teamsters Local 456, and pursuant to the Funds' Restated Agreements and Declarations of Trust (the "Trust Agreements"), incorporated by direct reference into the CBA.

WHEREAS, Funds filed a lawsuit against the Employer in the United States District Court, Southern District of New York entitled *456 Fund Trustees v. K&D Industries of N.Y. LLC* Case No.: 14-cv-7830 seeking employee benefit fund contributions (the "Litigation"), and

WHEREAS, the Parties agree to resolve the Litigation as follows:

1. The Employer agrees to pay the Funds Two Hundred Thirty-One Thousand Nine Hundred Four Dollars and Seventy-Four Cents ($231,904.74) ("Settlement Amount"), which sum settles from 2006 up through and including August 30, 2014, other than any withdrawal liability owed to the 456 Pension Fund which is expressly excluded from any release in this Settlement Agreement, as follows:

   a. The first payment of Eighty Thousand Dollars ($80,000.00) shall be

1

withdrawn from Karl Bjorkland's Local 456 Annuity account. The Funds acknowledge receipt of dully executed paperwork to effectuate the transfer of monies and shall use their best efforts to have the $80,000.00 withdrawn before July 31, 2016;

b. Thereafter, commencing on September 10, 2016, the Employer shall make monthly payments pursuant to the attached amortization schedule by the tenth (10th) of the month each month commencing September 2016 through August 2018, with a balloon payment due September 2018 in the amount of $71,622.82;

c. Provided the Employer has timely paid all payments in the first twenty-four (24) months of the attached amortization schedule, and timely paid by the tenth of each month any current monthly contributions and timely provided by the tenth of each month monthly remittance forms accurately reflecting the employees hours and names and contribution amounts for employees performing work covered by the 456 collective bargaining agreement, the Employer in lieu of the balloon payment in May 2018 shall be allowed to continue the amortization payment schedule through month 42.

2. The Employer shall make all payments in the form of a check payable to the "Teamsters Local 456 Allied Benefit Funds". If Employer bounces any settlement agreement checks then future checks shall be certified or bank checks.

3. Checks shall be delivered on or before 5 P.M on the due date to 456 Teamsters Allied Benefit Funds, 160 S. Central Ave, Elmsford, NY 10523 Attn: Fund Administrator Andrew Mackle.

4. A "So Ordered" a Stipulation of Discontinuance with Prejudice will be filed with the Court and with language that the parties agree the Court retains subject matter and personal jurisdiction to enforce the terms of this Settlement Agreement. The Stipulation of Discontinuance with Prejudice shall be in the form annexed at Exhibit A. Upon execution of this Settlement Agreement, Plaintiffs' counsel shall receive the signed Stipulation of Discontinuance with Prejudice and shall file this Stipulation of Discontinuance with Prejudice upon the Funds receiving the first payment of Eighty Thousand Dollars ($80,000.00). The parties agree the United States District Court for the Southern District of New York shall reserve and have subject matter and personal jurisdiction to enforce the terms of this Settlement Agreement and language to that effect shall be included in the Stipulation of Discontinuance.

5. The Employer and its counsel release the Funds and Local 456, their employers, agents, attorneys, actuaries, accountants, representatives and assigns from any claim for attorneys' fees or other costs or expenses or disbursements arising from or pertaining to the Litigation.

6. The Employer admits and acknowledges that, in accordance with its obligations under any collective bargaining agreement and during collective bargaining negotiations, it remains obligated to timely remit all future Funds contributions as they become due, together with remittance forms, in addition to payment of the amounts in this Settlement Agreement. The Employer acknowledges the prospective timely payment of monthly contributions and submission of monthly remittance forms is a material part of this Settlement Agreement which representation the Funds rely upon to their detriment in entering this Settlement Agreement.

7. The Employer shall also be responsible for any legal fees incurred by the Funds and/or Local 456 in connection with the administration and/or enforcement of this Settlement

3

Agreement.  Any application for attorney's fees must follow the lodestar method set forth by 2nd Circuit Court of Appeals and shall be submitted to the Southern District of New York, unless the attorney fee calculation is part of filing confessions of judgment in New York State court in which case a lodestar fee application may be made in that state court.

8.      The Parties agree this Settlement Agreement only covers time periods from 2006 and August 30, 2014. The Parties also agree this Settlement Agreement does not cover any Local 456 Pension Fund withdrawal liability claim and that the Funds provide no release to Employer for any period later than August 30, 2014 and no release for any withdrawal liability claim, all rights which are expressly reserved.

9.      The Employer agrees that the failure to tender any payment on the dates specified in this Settlement Agreement, the failure of any payment due the Funds to clear at the Funds' financial institution, the failure to pay the interest specified in ¶ 1 of this Settlement Agreement, the filing of bankruptcy or the Employer being placed in involuntary bankruptcy, and/or the failure to remain current in their contribution and reporting obligations to the Funds and/or Local 456, shall constitute a Default under this Settlement Agreement.  In the event of a Default, if the Employer fails to cure such Default within ten (10) calendar days after written notice of such Default is mailed to the Employer by first class mail to K&D Industries of NY, LLC , at 1006 Lower South Street, Peekskill, New York 10566, and first class mail to Karin Arrospide, Esq., 747 3rd Avenue, 2nd Fl., NY, NY 10017the Funds and/or Local 456 shall be entitled to promptly have judgment entered against the Employer in , the United States District Court, Southern District of New York or such other state or federal court of competent jurisdiction (the "Court") for breach of this Settlement Agreement in the full amount of Two Hundred Thirty-One Thousand Nine Hundred Four Dollars and Seventy-Four Cents ($231,904.74), less any payments

4

received under this Settlement Agreement, plus interest at the rate of ten percent from date of default, plus the attorneys' fees as determined by the Court. The Funds' and/or Local 456's failure to utilize this remedy in the case of any one or more defaults hereunder shall not constitute a waiver of the Funds' and/or Local 456's right to utilize this remedy in the event of a future default. In addition, the parties acknowledge that the Funds and Local 456 may use all remedies as provided under the collective bargaining or applicable trust agreements or in law or equity to secure any such default. The Employer's principal, Mr. Karl Bjorkland, and the Employer shall each sign a Confession of Judgment in the form attached hereto at Exhibit B. Upon default and a failure to cure the default the Funds may file these confessions of judgment without further notice to the Employer in any state court.

10.     This Settlement Agreement constitutes the entire agreement among the Parties and may be modified only by a written agreement signed by authorized representatives of the Parties. The Parties to this Settlement Agreement entered it voluntarily and after consulting with counsel.

11.     This Settlement Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same instrument. This Settlement Agreement may be executed by facsimile or e-mailed signatures which signatures shall be deemed originals for purposes of this Settlement Agreement.

5

IN WITNESS WHEREOF, the signatories to this Settlement Agreement have caused

this Settlement Agreement to be executed by their respective representatives thereunto duly

authorized or themselves where indicated:

Dated:
TRIVELLA & FORTE, LLP
*Attorneys for Plaintiffs*

By: Christopher Smith
1311 Mamaroneck Ave.
Suite 170
White Plains, New York 10605
Telephone: (914) 949-9075
Facsimile: (914) 949-4752

Dated: July 11, 2019
Karin Arróspide, Esq.
747 3rd Avenue, 2nd Floor
New York, NY 10017
*Attorney for Defendant*

By: Karin Arróspide, Esq.

K&D Industries of NY, LLC

Karl Bjorkland, duly authorized by the
shareholders of K&D Industries of
NY, LLC

Karl Bjorkland, individually as
guarantor of payment

Karl Bjorkland